HINCHEY ET AL. *v.* SELDON ET AL.

*Deeds—Proof of delivery insufficient, when—Deed forwarded by recorder to grantor for delivery.*

When a deed is duly executed and forwarded by the grantor thereof to the recorder of the proper county, with the recording fee enclosed, with directions to the recorder to record the deed and return it to the grantor "for delivery," all of which the recorder does, there is a failure of proof of delivery of such deed where the evidence does not show what disposition was made of the deed by the grantor after its return to him.

(Decided March 13, 1923.)

APPEAL: Court of Appeals for Hamilton county.

*Messrs. Dempsey & Dempsey; Messrs. Lorbach & Garver; Messrs. Shaffer & Williams; Mr. Wm. C. Lambert; Mr. S. S. Davies; Mr. D. C. Talbott,* and *Messrs. O'Connell & O'Connell,* for plaintiffs.

*Messrs. Roettinger & Street* and *Messrs. Worthington, Strong, Stettinius & Hollister,* for defendants.

HAMILTON, J.   This case is here on appeal from the decision of the Court of Common Pleas of Hamilton county.   The action is one in partition, and the controversy is over one parcel of real estate, described in the petition.

The issue is made by the petition, and by the cross-petition of Howard K. James, George L. Mayer and Amy Mayer Welsh, the latter two being children and heirs at law of Louis G. Mayer, deceased.   These cross-petitioners claim the ownership of the real estate under and by virtue of

a certain deed from Charlotte H. Murray to "The James & Mayer Buggy Company, a firm formerly doing business at Lawrenceburg, Indiana."

The other parties to this action are legatees, heirs at law, and next of kin of Charlotte H. Murray, now deceased, who deny the validity of the deed, and claim ownership of the real estate; deny that there was any deed conveying the real estate to the cross-petitioners above named; deny that the deed under which they claim was ever delivered to or accepted by them; deny that there was any consideration for the deed and challenge the mental capacity of Mrs. Murray to make a deed; and deny that sufficient grantee is named in the deed, under the law, to vest the title to the real estate in the above-named cross-petitioners. The defendant Provident Savings Bank & Trust Company holds a mortgage on the premises, executed by Charlotte Murray, deceased, in her lifetime, which mortgage is not questioned.

The questions presented are interesting and not without difficulty. The events and facts pertinent are chronologically as follows:

In 1887, Howard K. James and Louis G. Mayer formed a partnership under the name of "James & Mayer Buggy Company," and started business on Elm street in Cincinnati.

Wilbur H. Murray, the husband of Charlotte Murray, was a friend of James and Mayer, and began handling their output in a small way. Later, Murray formed a corporation under the name of The Murray Manufacturing Company, and increased his business with the James & Mayer Buggy Company. Murray was extended considerable credit by the James & Mayer Buggy

Company, and became indebted to it in a large sum.

In 1891, the James & Mayer Buggy Company moved its business to Lawrenceburg, Indiana. Murray, as The Murray Manufacturing Company, continued to do business with the firm, and received additional credit.

In 1893, the James & Mayer Buggy Company, the partnership, formed a corporation under the name and style of "The James & Mayer Buggy Company," and took over all the assets, including the book accounts, of the partnership. The corporation consisted of Howard K. James, Louis G. Mayer and William N. Eckstein. Shortly thereafter, the James and Mayer corporation refused Murray further credit, he having become a debtor to the amount of about $17,000, and shortly thereafter one George L. Hamilton put considerable money into the James and Mayer corporation and became one of the stockholders.

In 1899, Wilbur Murray failed, and The Murray Manufacturing Company was declared a bankrupt, and was discharged in bankruptcy. Subsequently, Murray died, leaving a son and daughter by a former marriage. A large amount of property had come into the hands of his widow, Charlotte H. Murray.

In 1905, The James & Mayer Buggy Company, corporation, was adjudged a bankrupt. That bankruptcy was immediately succeeded by the formation of a new corporation, by James and a number of citizens of Lawrenceburg, Indiana, under the corporate name of The James & Meyer Buggy Company.

Howard K. James was president of both corporations during their existence.

Later, The James & Meyer Buggy Company was placed in the hands of George Kunz, as receiver. Later, one Thomas Craven, an attorney of Lawrenceburg, Indiana, was named trustee in bankruptcy. In May, 1917, Craven, trustee, was removed by the United States District Court, and Joseph Daniels, of Indianapolis, was appointed to succeed him.

Wilbur Murray died without having satisfied the original indebtedness to the James & Mayer Buggy Company, a partnership, and The James & Mayer Buggy Company, a corporation. There was no legal obligation to pay this indebtedness, as he had been discharged in bankruptcy, and, further, the debt was barred by the statute of limitations.

In April, 1912, Charlotte Murray was adjudged a lunatic by the Probate Court of Hamilton county, Ohio, and placed under guardianship.

July 7, 1916, the guardianship was lifted, and Mrs. Murray was restored to her property, having been under guardianship about four years.

A few months later, said Charlotte Murray, widow of Wilbur Murray, expressed to different parties a desire to pay off the old debt of her deceased husband, above referred to—to clear his name, as she expressed it. Pursuant to that desire a deed was drawn by Judge O'Connell, who had formerly been her guardian, deeding the property in question to Howard K. James and Louis G. Mayer. Mrs. Murray executed this deed, but interlined as grantees "The James & Mayer Buggy Company." This deed was never recorded and

disappeared. What became of it does not appear.

Early in 1917, Mrs. Murray, who then resided in New York, took up the question of satisfying the old indebtedness, above referred to, with Mr. Ginter, of Cincinnati, who was attorney for The Provident Savings Bank & Trust Company, the mortgagee. Pursuant to her request, Mr. Ginter, prepared and sent to her in New York City an other deed to the James & Mayer Buggy Company, for the same property, protecting the mortgage of the bank, conditioned that the grantees should pay the same. Mr. Ginter, not knowing whether the grantee was a corporation or a partnership, left a blank, with instructions to insert such description therein. Mrs. Murray was not satisfied with this deed, seemingly concerned about other parties being interested, who might not receive the benefit under the deed. She declined to execute this deed at the time, and we hear nothing more of this deed.

In April, 1917, Roettinger & Roettinger, lawyers at Cincinnati, who had been attorneys for some creditors concerned, seemed to have acquired knowledge of Mrs. Murray's attempt to in some manner discharge this old indebtedness, and wrote to Brown & Cooksey, a firm of attorneys in New York City, with whom they were acquainted, calling their attention to the matter, and asking that they call on Mrs. Murray with reference thereto. Mr. Brown called upon her and talked over with her the matter of the deed. Brown and his partner, Cooksey, had a further conversation with her at the Waldorf Hotel with reference to making the deed. Some time passed, during which Mrs. Murray was in the hospital, before she again saw the lawyers, Brown and Cooksey.

On April 17, 1917, she executed a deed for the property in question, naming as grantee "The James & Mayer Buggy Company, a firm doing business formerly at Lawrenceburg, Indiana." This deed was duly executed and forwarded to the recorder of Hamilton county, Ohio, with the recording fee enclosed, directing the recorder to record the deed and return it to her "for delivery."

On April 25, the recorder having recorded the deed, mailed the same to Mrs. Murray, in New York. For some reason, the deed was returned to the recorder, undelivered to Mrs. Murray. Whereupon, he remailed the deed to Mrs. Murray, addressed to No. 329 W. 104th street, New York. This was on May 15, 1917.

On or about June 4, 1917, Mrs. Charlotte Murray died testate.

Meanwhile, in the latter part of May, 1917, a letter from Mrs. Murray arrived at the post-office in Lawrenceburg, Indiana. That letter was addressed to The James & Mayer Buggy Company. The postmaster gave the letter to Mr. Kunz, who was then acting as receiver of the second corporation, The James & Meyer Buggy Company. The letter stated in substance that he (Kunz) should come to see Mrs. Murray at New York, and bring one dollar and a fountain pen, and she "would do the rest." Kunz concluded that the letter did not belong to him, and returned it to the postmaster, who states that he remailed the letter back to the return address on the envelope. About ten days later, another envelope came with the same return mark on it, addressed to The James & Mayer

Buggy Company. In this envelope was a deed.
The postmaster delivered the envelope, containing
the deed, to Mr. Kunz, who testifies that he sub-
mitted the matter to his attorney, Mr. Thomas.
Craven, who informed him that it was not a mat-
ter for The James & Meyer Buggy Company,
whom they represented, but was to The James
& Mayer Buggy Company. Kunz testified that
he left the deed with Craven, to be returned to
the return address. This deed has not since been
seen or heard of by anyone, so far as known.
Craven was not called as a witness in the case.
Why, we do not know. The only evidence as to
what this deed contained was the testimony of
Kunz that the deed was for Cincinnati real estate,
was signed by Mrs. Murray, and was a deed to
The James & Mayer Buggy Company.

July 19, 1917, following, Joseph Daniels, who
had become trustee in bankruptcy of the first
James & Mayer Buggy Company, a corporation,
filed his petition in the United States District
Court for the Southern District of Ohio for au-
thority to sell the real estate. He named Louis
G. Mayer and Howard K. James, and The James
& Mayer Buggy Company, defendants, claiming
the property by virtue of the deed of April 17,
1917, as shown on the records of Hamilton county,
Ohio, to be the property of the corporation of
which he was the trustee in bankruptcy.

Neither Louis G. Mayer, Howard K. James, nor
the James & Mayer Buggy Company, a firm, filed
any answer or other pleading in that case, although
served with summons.

One of the devisees, Elma Murray Sandifer, a
daughter of the deceased Wilbur Murray, filed her

answer and cross-petition in this action and moved to dismiss the petition. Judge Hollister, of the United States District Court, granted the motion, and entered a judgment of dismissal, on the ground that the plaintiff, as said trustee in bankruptcy, did not have legal capacity to begin or maintain the suit.

James saw an account of the recording of the deed published in the Cincinnati Enquirer, the Sunday following its recording; but the matter lay dormant for about two years. Meanwhile, Louis G. Mayer died, leaving George L. Mayer and Amy Mayer Welsh his sole heirs at law.

On July 16, 1919, Howard K. James, George L. Mayer and Amy Mayer Welsh filed their petition, claiming title to the real estate in question, and praying that their title be quieted as against the defendants. The defendants were the legatees and heirs at law of Charlotte Murray, deceased. The defendants answered, denying the claim of the plaintiffs, and the case was afterwards dismissed by the plaintiffs.

In the meantime, the heirs of Charlotte Murray, who were dissatisfied with her will, threatened suit to set aside the will. A compromise was effected, and an agreement for distribution was entered into by all the heirs and legatees, and Charles E. Dornette was appointed trustee to carry out the terms of settlement. As such trustee, on the 13th day of April, 1920, Dornette filed a suit against The James & Mayer Buggy Company of Lawrenceburg, Indiana, a corporation, and The James & Meyer Buggy Company, of Lawrenceburg, Indiana, a corporation, Howard K. James, George L. Mayer and Amy Mayer Welsh, as defendants, asking that the

paper writing, under which they claimed title to the property, be declared null and void, and be cancelled from the records, and that the title be quieted as against them. To this petition, Howard K. James, George L. Mayer and Amy Mayer Welsh answered, claiming the property, and seeking other relief. This action is still pending.

Thereafter, the plaintiff in this action, Harriet Hinchey, filed her petition in partition, making all parties defendants, and praying partition of several parcels of land, one of which is the parcel here in question, and Howard K. James, George L. Mayer and Amy Mayer Welsh filed their answer and cross-petition, directly raising the question of the title to the real estate in suit.

In considering this case we start with two well-recognized principles of law:

First. That it is not essential to the validity of a deed that there be manual delivery, or that anything in terms be said about its delivery. The fact of delivery may be found from the acts of the parties, preceding, attending and subsequent to the execution of the instrument. *Lessee of Shirley* v. *Ayres*, 14 Ohio, 307; *Lessee of Mitchell* v. *Ryan*, 3 Ohio St., 377, and *Dukes* v. *Spangler*, 35 Ohio St., 119.

Second. That the common-law rule that a conveyance to a partnership, not being a legal entity, conveys nothing, has been relaxed. This is plainly expressed in 1 Bates on Partnerships, Section 296, page 295, as follows:

"But in many states this rule has been relaxed, and a deed or mortgage to A. & B. or A. & Co. has been held valid, or at least not void for uncertainty on proof of identity, doubtless on the

principle of *id certum quod reddi certum potest;* and probably in all states such a deed or mortgage to or by partners in the firm name would be enforced in equity, where the defect could be cured, where the litigation is between partners, or between a firm and its grantee or mortgagee, and there is no dispute as to priorities of other liens.''

It will be noted that there is no claim or mortgage, no lien-holder or creditor, in this action. Howard K. James and the heirs of Louis G. Mayer are here claiming the property in their individual capacity under and by virtue of the deed in question.

In the case of *Lessee of Mitchell* v. *Ryan, supra,* the court lays down the rule that the record of a deed is *prima facie* evidence of its delivery, but such *prima facie* case may be rebutted by proof. The evidence is that the instructions of Mrs. Murray to the recorder were that after the recording of the deed, the deed should be returned to her ''for delivery.'' Up to this time there could be no claim that Mrs. Murray had parted with the title by delivery of the deed. This further act she reserved to herself after the recording.

After the return of the deed to Mrs. Murray by the second mailing to her address in New York, the case becomes cloudy and is surrounded by mystery.

Was the deed recorded in the recorder's office in Cincinnati the deed which was received by the Postmaster at Lawrenceburg, Indiana, and by him given to Kunz, the receiver of The James & Meyer Buggy Company, and by him delivered to Thomas Craven, his attorney? Two other deeds, previously drawn at her request, were not accounted for.

The only identification shown by the record was the testimony of Kunz that his recollection was that the deed was for some Cincinnati real estate, that it was signed by Mrs. Murray, and named The James & Mayer Buggy Company, as grantee.

It is clear that if Mrs. Murray retained the deed that was recorded there was no delivery sufficient to pass the title. She had reserved the question of delivery for future consideration. From her letter to The James & Mayer Buggy Company, received at Lawrenceburg in May, 1917, as testified to by the postmaster and Kunz, she desired someone to come to New York for some purpose connected with the transaction. She requested that he bring one dollar and a fountain pen. She might have intended by that that he was to pay the one dollar consideration and receipt the discharge of the indebtedness of her deceased husband. This can only be surmised as there is no direct evidence on the question. In so far as the identification of the deed received at Lawrenceburg is concerned, there is nothing to show that that deed was ever recorded. Why Craven was not called to testify on this point, we do not know. He may or may not have possessed the knowledge on that question.

We are disposed to the view that the evidence fails to show that the deed recorded ever left the hands of Mrs. Murray, after its return to her as she directed. Had she not given the instruction to the recorder to return the same to her "for delivery," the rule in the case of *Mitchell* v. *Ryan, supra,* would place the burden of proof on the next of kin to show no delivery, but, the evidence showing directly that this was not to be considered as

delivery by the grantor, there is no evidence of its delivery in the absence of identification of the deed which arrived by mail at Lawrenceburg. Even if there had been a sufficient identification to show that the deed received was the deed recorded, which would probably connect up the matter in such a way that delivery might be considered, the question to whom delivery should be made would follow. In other words, whom did she intend as grantees?

It is urged that she intended the creditors of her deceased husband, who had aided him in his earlier career in business, and that these parties could be shown with certainty, that under the rule, *id certum quod reddi certum potest,* the conveyance was good, although the grantee, as named in the deed, was "The James & Mayer Buggy Company, a firm doing business formerly at Lawrenceburg, Indiana." Did she want Howard K. James and Louis G. Mayer, or his heirs, to receive the benefit of the deed? That she did so, cannot be successfully maintained, for the reason that a deed to Howard K. James and Louis G. Mayer was drawn by her former guardian, Judge John G. O'Connell, and sent to her for execution. She declined to execute such a deed to Howard K. James and Louis G. Mayer, as that was not what she wanted. There is evidence to the effect that she declined to execute a deed to the individuals for the reason that she thought there was a third, and possibly other members of the old firm, interested in the indebtedness. The record shows that such existed.

Did she intend that the grant should be to the James & Mayer Buggy Company, the old partner-

ship? This partnership had been out of existence for twenty-four years at the time of the execution of the deed.

Did she desire the grant to be to The James & Mayer Buggy Company, the first corporation? This corporation had been adjudged a bankrupt twelve years preceding the execution of the deed, and, as above stated, the record discloses that she did not want to make a deed to Howard K. James and Louis G. Mayer, individually.

The evidence fails to disclose any legal entity capable of receiving the grant. The partnership had determined twenty-four years prior thereto, and the corporations were all declared bankrupt many years before.

Many cases have been cited from many states in the briefs of counsel, on both sides of this controversy, but they are of little aid in arriving at a conclusion, for the reason that in none of the cases cited do the facts even approximate the facts in this case.

The question of the mental capacity of Mrs. Murray to execute the deed is raised, and while the direct evidence is that at the time of the execution of the deed she showed mental capacity to make the deed, yet, in considering this case, in which the intention claimed is based largely on inference, we cannot overlook the proposition that Mrs. Murray had been adjudged insane, and for four years had been under guardianship; that there was evidence of other abnormal acts on her part concerning her property; and that she began this question of deeding some of her property to discharge an outlawed debt of her husband but a few months after the guardianship was lifted. If this were

the only point in the case, the evidence would sus
tain her mental capacity to make the deed; never-
theless we are of opinion that it is proper to con-
sider that question in connection with all of the
other circumstances of the case. While such deed
would have the appearance of bearing the consid-
eration of moral obligation, it would be nothing
more or less than a deed of gift.

Our conclusion is that under all the circum-
stances of this case there was no delivery of the
deed, that the grantee is not designated with suffi-
cient certainty, and that the equities are with the
heirs and next of kin, who are entitled to the relief
asked.

The cross-petition of Howard K. James, George
L. Mayer and Amy Mayer Welsh is dismissed.

A decree may be prepared accordingly.

*Decree accordingly.*

CUSHING and BUCHWALTER, JJ., concur.